UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JENNIFER CAPPUCCIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 14-10152-JGD |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OF DECISION AND ORDER
## ON CROSS-MOTIONS REGARDING DENIAL OF
## SOCIAL SECURITY DISABILITY INSURANCE BENEFITS

October 8, 2015

DEIN, U.S.M.J.

## I.  INTRODUCTION

Plaintiff, Jennifer Cappuccio ("Cappuccio"), has brought this action pro se, pursuant to

section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in order to challenge the final

decision of the Commissioner of the Social Security Administration (the "Commissioner")

denying Cappuccio's claim for Social Security Disability Insurance ("SSDI") benefits.  The matter

is presently before the court on the plaintiff's "Motion for Order Reversing the Commissioner's

Decision" (Docket No. 12) by which Cappuccio is seeking an order reversing the Commissioner's

decision and allowing her claim for benefits, or in the alternative, remanding the matter to the

Social Security Administration for consideration of additional evidence.[1]  The matter is also

---

[1] It is not clear whether the plaintiff is asking, as an alternative to reversal, for a remand of the matter for consideration of the new evidence attached to her motion, or whether she is asking the court to consider that

before the court on the defendant's "Motion to Affirm the Commissioner's Decision" (Docket No. 13) by which the Commissioner is seeking an order upholding her decision that the plaintiff is not disabled and is therefore not entitled to SSDI.  The principal issues raised by the parties' motions is whether the Administrative Law Judge ("ALJ"), in reaching her decision that Cappuccio was not disabled, gave appropriate weight to the opinions of various health care providers regarding the nature and limiting effects of the plaintiff's physical and mental limitations, and properly considered the findings of a consulting neuropsychologist who met with Cappuccio and administered a mental status assessment.  In addition, the parties dispute whether the plaintiff's submission of new evidence requires a remand to the Social Security Administration.

As described below, this court finds that the ALJ committed error by failing to provide an adequate explanation for the weight that she gave to the opinions of the plaintiff's treating psychotherapist, William F. Scalise, MSW, LICSW, and that her error warrants a remand for further administrative proceedings.  Accordingly, and for all the reasons detailed herein, the Commissioner's motion to affirm is DENIED and the plaintiff's motion to reverse or remand is ALLOWED IN PART and DENIED IN PART.  Upon remand, the ALJ should consider Mr. Scalise's June 19, 2014 Evaluation and Treatment Summary, which is attached to the plaintiff's motion as exhibit 1C.  However, the ALJ is not obligated to consider any of the remaining exhibits submitted by the plaintiff on appeal.

---

evidence on appeal.  As described below, this court is not permitted to consider such evidence in connection with its analysis on appeal because it was not presented to the Administrative Law Judge in connection with Cappuccio's claim for benefits.  In light of the fact that Cappuccio is proceeding pro se, this court has given her the benefit of the doubt, and has construed her submission of new material as a request for alternative relief in the form of a remand to the Social Security Administration for consideration of new evidence.

## II.  STATEMENT OF FACTS[2]

Cappuccio was born on October 26, 1959, and was 53 years old at the time of her

hearing before the ALJ.  (Tr. 42).  She is a high school graduate, completed two years of college,

and obtained an OSHA certification in 2007.  (Tr. 181).  Cappuccio is married and has a teenage

daughter who continues to live at home.  (Tr. 42).

During the time period from 1995 to 2010, Cappuccio was employed as a laborer in the

construction industry.  (Tr. 203).  However, she was laid off in November 2010 when the job she

was working on came to an end.  (Tr. 180, 282).  Cappuccio claims that she has been disabled

from working since that time due to an injury to her right knee, arthritis in her knee and foot,

lung/immune problems, sleep apnea, scoliosis, anxiety, depression and an under active thyroid.

(Tr. 180).

### Procedural History

On April 19, 2011, the plaintiff filed an application for SSDI, claiming that she had been

unable to work since November 15, 2010.  (Tr. 157).  Her application was denied initially in

August 2011, and upon reconsideration in November 2011.  (Tr. 69, 82).  The plaintiff then

requested and was granted a hearing before an ALJ, which took place on November 8, 2012.

(Tr. 113-14, 118-22).  Cappuccio, who was represented by counsel, appeared and testified at

the hearing.  (Tr. 36-60).  The ALJ also obtained testimony from a vocational expert ("VE"), who

described the plaintiff's vocational background based on her past work experience, and

---

[2] References to pages in the transcript of the record proceedings shall be cited as "Tr. __."  The ALJ's Decision shall
be cited as "Dec." and can be found beginning at Tr. 12.

responded to hypothetical questions, which were designed to determine whether jobs exist in the national and state economies for an individual with the same age, educational background, work experience and residual functional capacity ("RFC") as the plaintiff.  (Tr. 63-65).  On December 20, 2012, the ALJ issued a decision denying the plaintiff's claim for benefits.  (Tr. 8-20).

On January 9, 2013, Cappuccio filed a request for review of the ALJ's decision by the Social Security Appeals Council.  (Tr. 6-7).  On November 19, 2013, the Appeals Council denied the plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner for purposes of review.  (Tr. 1-3).  Accordingly, the plaintiff has exhausted all of her administrative remedies, and the case is ripe for review pursuant to 42 U.S.C. § 405(g).

## The ALJ's Decision

The ALJ concluded that from November 15, 2010 through the date of her decision on December 20, 2012, Cappuccio "ha[d] not been under a disability, as defined in the Social Security Act," which defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  (Dec. Finding # 11; Tr. 19).  See also 42 U.S.C. § 423(d)(1)(A).  There can be no dispute that the ALJ, in reaching her decision that Cappuccio was not disabled, performed the five-step sequential evaluation required by 20 C.F.R. § 404.1520.  The procedure resulted in the following analysis, which is detailed further in the ALJ's "Findings of Fact and Conclusions of Law."  (See Dec. 3-9; Tr. 13-19).

4

The first inquiry in the five-step evaluation process is whether the claimant is "engaged in substantial gainful work activity[.]"  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  If so, the claimant is automatically considered not disabled and the application for benefits is denied. See id.  In this case, the ALJ found that Cappuccio had not engaged in such activity since November 15, 2010, the alleged onset date of her disability.  (Dec. Finding #2; Tr. 13). Therefore, she proceeded to the second step in the sequential analysis.

The second inquiry is whether the claimant has a "severe impairment," meaning an "impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities[.]"  20 C.F.R. § 404.1520(c).  If not, the claimant is deemed not to be disabled and the application for benefits is denied.  See Seavey, 276 F.3d at 5.  Here, the ALJ determined that Cappuccio suffered from a number of severe impairments, which included "osteoarthritis of the right knee and right foot, chemical sensitivity, anxiety and depression." (Dec. Finding #3; Tr. 13).

Because the ALJ determined that the plaintiff had impairments that were severe, the ALJ proceeded to step three in the sequential analysis.  The third inquiry is whether the claimant has an impairment equivalent to a specific list of impairments contained in Appendix 1 of the Social Security regulations.  See Seavey, 276 F. 3d at 5; 20 C.F.R. § 404.1520(d).  At this step, the ALJ concluded that the plaintiff's impairments, either alone or in combination, did not meet or medically equal any of the listed impairments.  (Dec. Finding #4; Tr. 14).  Accordingly, her analysis continued.

The fourth inquiry asks whether "the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work[.]"  Seavey, 276 F.3d at 5.  Thus, in order to

answer this question, the ALJ must first determine the claimant's RFC.  In the instant case, the

ALJ assessed Cappuccio's RFC as follows:

> After careful consideration of the entire record, I find that the claimant
> has the residual functional capacity to perform light work as defined in 20
> CFR 404.1567(b)[3] except that the claimant is never able to climb ladders,
> ropes and scaffolds and is able to occasionally balance, stoop, kneel or
> crouch.  *The claimant must avoid even moderate exposure to irritants like
> fumes, odors, dusts, gases and chemical vapors*.  The claimant is limited
> to simple routine tasks, occasional decision-making, occasional changes
> in work setting and occasional interaction with the public.

(Dec. Finding #5; Tr. 15 (emphasis added)).

In reaching her conclusion regarding Cappuccio's RFC, the ALJ considered the plaintiff's

symptoms and the extent to which her symptoms could "reasonably be accepted as consistent

with the objective medical evidence and other evidence[.]"  (Dec. 5; Tr. 15).  She also

considered the opinions that had been expressed by certain treating and non-treating sources.

(See  Dec. 7-8; Tr. 17-18).  In her challenge to the ALJ's decision, Cappuccio takes issue with the

manner in which the ALJ evaluated and weighed certain portions of the medical records, and

contends that the ALJ erred by failing to adopt the opinions of several of her health care

providers.  Because the ALJ failed to explain her treatment of the evidence from Cappuccio's

treating therapist, and this court is not able to determine, without speculation, whether the ALJ

performed a proper evaluation of that evidence, this court finds it necessary to remand the

matter back to the ALJ.

---

[3]  20 C.F.R. § 404.1567(b) defines "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

After explaining the basis for her RFC determination, the ALJ concluded that Cappuccio was unable to perform any of her past relevant work.  (Dec. Finding #6; Tr. 18).  Consequently, she reached the fifth and final step in the sequential analysis.

The fifth inquiry is whether, given the claimant's RFC, education, work experience and age, the claimant is capable of performing other work.  See Seavey, 276 F.3d at 5; 20 C.F.R. § 404.1520(a)(4)(v).  If so, the claimant is not disabled.  20 C.F.R. § 404.1520(g).  At step five, the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Seavey, 276 F.3d at 5.  Here, the ALJ relied on the VE's testimony to conclude that Cappuccio was capable of performing work that exists in significant numbers in the national economy.   (Dec. 9 and Finding #10; Tr. 19).  There-fore, the ALJ found that the plaintiff was not disabled under the Social Security Act.  (Dec. 9; Tr. 19).

Additional factual details relevant to this court's analysis are described below where appropriate.

## III.  **ANALYSIS**

### A.  **Standard of Review**

By her complaint in this action, Cappuccio is seeking judicial review of the Commis-sioner's "final decision" pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act").  Section 205(g) of the Act provides in relevant part as follows:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action …. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without

> remanding the cause for a rehearing.  The findings of the Commissioner
> of Social Security as to any fact, if supported by *substantial evidence*, shall
> be conclusive ….

42 U.S.C. § 405(g) (emphasis added).  The Supreme Court has defined "substantial evidence" to mean "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

As the First Circuit has explained:

> In reviewing the record for substantial evidence, we are to keep in mind
> that "issues of credibility and the drawing of permissible inference from
> evidentiary facts are the prime responsibility of the [Commissioner]."
> The [Commissioner] may (and, under [her] regulations, must) take
> medical evidence.  But the resolution of conflicts in the evidence and the
> determination of the ultimate question of disability is for [her], not for
> the doctors or for the courts.  We must uphold the [Commissioner's]
> findings in this case if a reasonable mind, reviewing the record as a
> whole, could accept it as adequate to support [her] conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).  Therefore, "the court's function is a narrow one limited to determining whether there is substantial evidence to support the [Commissioner's] findings and whether the decision conformed to statutory requirements."  Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315, 319 (1st Cir. 1981).  The Commissioner's decision must be affirmed, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

"Even in the presence of substantial evidence, however, the Court may review conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" Musto v. Halter, 135 F. Supp. 2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)) (internal citations omitted).   "Thus, if the ALJ made a legal or factual error, the court may reverse or remand such decision to consider new, material evidence or to apply the correct legal standard." Ross v. Astrue, C.A. No. 09-11392-DJC, 2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

## B.   **Plaintiff's Challenge to the RFC Determination**

In support of her motion to reverse the Commissioner's decision, the plaintiff effectively challenges the manner in which the ALJ evaluated and weighed the available evidence in assessing her RFC.  In particular, Cappuccio contends that the ALJ committed error by failing to adopt the findings and opinions of her treating physicians, David C. Christiani, M.D. and Brian P. McKeon, M.D., regarding the nature and extent of her physical limitations.  (See Pl. Mot. at 1-2). She also contends that the ALJ erred by failing to credit the assessments of her treating therapist, Mr. Scalise, and a state agency consultant, Michelle L. Imber, Ph.D., ABPP, regarding the nature and extent of Cappuccio's mental limitations.  (See id. at 2-3).  This court finds that while the ALJ's handling of these matters was otherwise appropriate, her failure to adequately explain her treatment of Mr. Scalise's assessments warrants a remand to the Commissioner for further proceedings.

**Scope of the Record on Review**

A threshold issue that has been raised by the plaintiff's motion concerns the scope of the record on appeal.  Cappuccio has asked this court to consider four documents that are attached as exhibits to her motion and contain information regarding the nature and limiting effects of her impairments.  There is no dispute that none of those documents were submitted to the Social Security Administration as part of the underlying proceedings, and that they are not part of the administrative record.  As a result, this court is not permitted to consider them in connection with its review of the ALJ's decision.  See Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001) (court "may review the ALJ decision solely on the evidence presented to the ALJ").  On the other hand, this court does "have the statutory authority to remand for further proceedings where new evidence is presented after the ALJ decision if the evidence is material *and* good cause is shown for the failure to present it on a timely basis."  Id. (emphasis in original). Therefore, following its review of the ALJ's decision, this court will address whether the ALJ should consider any of the documents upon remand.

**Dr. Christiani's Opinion**

Cappuccio's first claim of error concerns the opinion of Dr. Christiani, a pulmonologist who has treated the plaintiff's chemical sensitivity impairment since 2009.  (See Dec. 6; Tr. 16, 606).  On March 31, 2011, Dr. Christiani sent a letter to the plaintiff in which he stated as follows:

> In my opinion, within a reasonable degree of medical certainty, your medical condition is aggravated by exposures to dust, vapors, gasses and fumes.  Hence, in my opinion, you should have the following work restrictions: No exposures to chemical vapors, any fumes, gases or dust.

(Tr. 419).  The plaintiff argues that the ALJ should have credited this opinion and found

Cappuccio disabled.  (See Pl. Mot. at 1-2).  However, the record demonstrates that the ALJ did

credit Dr. Christiani's opinion, and that no error occurred.

As the ALJ acknowledged in her written decision, Dr. Christiani evaluated Cappuccio in

March 2011, and recommended that she avoid "exposure to chemical vapors, any fumes, gases

or dusts." (Dec. 6; Tr. 16).  The ALJ then proceeded to adopt this restriction at step 4 in her

analysis.  Specifically, the ALJ found, as part of her determination regarding the plaintiff's RFC,

that "[t]he claimant must avoid even moderate exposure to irritants like fumes, odors, dusts,

gases and chemical vapors."  (Dec. Finding #5; Tr. 15).  Therefore, the record demonstrates that

the ALJ incorporated Dr. Christiani's opinion into her decision, and that the plaintiff's claim of

error on this issue lacks merit.

The plaintiff argues that exposure to irritants such as vapors, fumes, gases, odors and

dusts, "is a prerequisite to many types of employment (e.g. fumes from printers in an office

setting, pesticides and other chemicals utilized in food service, etc.)."  (Pl. Mot. at 1).  While this

may be the case, it does not undermine the ALJ's conclusion that the plaintiff is not disabled.

For purposes of the Social Security analysis, the issue is not whether the claimant's impairments

preclude her from performing some or even most jobs.  Rather, this issue is whether her

impairments preclude her from engaging "in *any* substantial gainful [work] activity[.]"  42 U.S.C.

§ 423(d)(1)(A) (emphasis added).  See also Simumba v. Colvin, C.A. No. 12-30180-DJC, 2014 WL

1032609, at *1 (D. Mass. Mar. 17, 2014) (slip op.) (in order to be disabled within the meaning of

the Social Security regulations, the claimant must be "unable to perform any previous work or

any other substantial gainful activity for which the claimant is qualified and exists in the

national economy").  Here, the ALJ relied on the VE's testimony to conclude, based on the

plaintiff's age, education, work experience and RFC, that Cappuccio "is capable of making a

successful adjustment to other work that exists in significant numbers in the national

economy."  (Dec. 9; Tr. 19).  Therefore, she followed the proper procedure for determining

whether the plaintiff was disabled within the meaning of the Social Security Act.  See Sousa v.

Astrue, 783 F. Supp. 2d 226, 235 (D. Mass. 2011) ("The opinion of a vocational expert that a

Social Security claimant can perform certain jobs qualifies as substantial evidence at the fifth

step of the analysis").

### Dr. McKeon's Opinion

Cappuccio's next challenge concerns the ALJ's decision not to credit the opinion of her

orthopedic surgeon, Dr. McKeon, regarding the limiting effects of the plaintiff's physical

impairments.  (Pl. Mot. at 2).  On October 31, 2012, Dr. McKeon completed a Medical Assess-

ment of Ability to do Work-Related Activities describing Cappuccio's ability to perform various

physical activities on a day-to-day basis in an ordinary work setting.  (Tr. 555-56).  Therein, Dr.

McKeon stated that the plaintiff had the ability to lift no more than 10 pounds occasionally;

stand and/or walk for a total of 2 hours in an 8-hour work day; and sit for only 1 hour in an

8-hour work day.  (Tr. 555).  He also stated that she could never climb, balance, stoop, crouch,

kneel or crawl; had no ability to push or pull more than 10 pounds; was unable to move

machinery; and could not tolerate heights, temperature extremes, humidity or vibration.  (Tr.

556).  Additionally, Dr. McKeon opined that Cappuccio was "considered disabled due to

kneeling, squatting, lifting [and] climbing restrictions."  (Id.).  The ALJ explained that she was

giving "little weight" to Dr. McKeon's opinion on these matters because it was "inconsistent

with the record as a whole." (Dec. 8; Tr. 18). This court finds that there is substantial support

for the ALJ's decision on this issue.

"The law in this circuit does not require the ALJ to give greater weight to the opinions of

treating physicians." Arruda v. Barnhart, 314 F. Supp. 2d 52, 72 (D. Mass. 2004) (quoting Arroyo

v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991)). Instead, the Social Security

regulations "permit the ALJ to downplay the weight afforded a treating physician's assessment

of the nature and severity of an impairment where . . . it is internally inconsistent or inconsis-

tent with other evidence in the record including treatment notes and evaluations by examining

and nonexamining physicians." Id. Here, the record contains ample evidence showing that

Cappuccio was far less limited than Dr. McKeon described. Therefore, the ALJ's decision to give

his opinion "little weight" is entitled to deference by this court.

As the ALJ found in her written decision, Dr. McKeon's opinion is inconsistent with

evidence, including evidence from Dr. McKeon's own treatment notes, showing that the

plaintiff responded well to surgeries on her right knee and right foot, and engaged in only

limited treatment following completion of those surgeries. (See Dec. 7-8; Tr. 17-18; see also

503, 522, 574). It is also inconsistent with records describing the plaintiff's discharge from

physical therapy in December 2010, with clearance to "resume work activities." (Tr. 359). In

addition, as the ALJ stated in her decision, Dr. McKeon's opinion as to the plaintiff's physical

limitations is undermined by Cappuccio's reliance on over-the-counter medicine to treat her

physical symptoms, and by her own reports of her physical ability to carry out day-to-day

activities. (See Dec. 4, 8; Tr. 14, 18). Specifically, during the hearing, Cappuccio testified that

she is able to drive her daughter to school, dance classes and occasionally the mall or the

movies, go food shopping, and perform light housework, including cooking, vaccuming, dishwashing and laundry.  (Tr. 43-46 ).  The ALJ could reasonably infer from these facts that Cappuccio's physical abilities were greater than those described in Dr. McKeon's October 2012 assessment, and her decision to give that assessment "little weight" was supported by substantial evidence in the record.

Cappuccio nevertheless disputes the ALJ's conclusion that Dr. McKeon's opinion is inconsistent with the record, and she points to a progress note describing an appointment that she had with Dr. McKeon on June 20, 2011.  (Pl. Mot. at 2 (citing Tr. 503)).  During that appoint-ment, Dr. McKeon evaluated the plaintiff's right knee "status post arthroscopy back in 2009," and determined in relevant part that she was on "permanent restriction status" with "[n]o repetitive kneeling, lifting, squatting or climbing[.]"  (Tr. 503).  Cappuccio apparently relies on this restriction to show that Dr. McKeon's October 2012 assessment of her physical limitations is supported by, and consistent with, the remaining evidence in the record.[4]

The plaintiff's argument is insufficient to support her claim of error on the part of the ALJ.  As an initial matter, the restrictions described in Dr. McKeon's 2011 progress note are not consistent with his later opinion.  In his progress note, Dr. McKeon directed Cappuccio to refrain from *repetitive* kneeling, lifting, squatting or climbing.  (Tr. 503).  However, in 2012, he stated that she could *never* climb, balance, stoop, crouch, kneel or crawl, and was "disabled" as a result of her physical limitations.  (Tr. 556).  Thus, Dr. McKeon's more recent opinion places

---

[4] Cappuccio argues that Dr. McKeon's assessment of her physical limitations is also supported by the opinions expressed in a June 8, 2012 letter from Bernard E. Kreger, M.D. to the Pension/Annuity Director at the Massachusetts Laborers' Pension Fund.  (Pl. Mot. at 2).  However, the plaintiff acknowledges that the letter, which is attached as one of the exhibits to her motion, was never submitted to the ALJ because her former attorney believed it was not necessary to do so.  (Id.).  Therefore, this court may not consider it as part of the record on appeal.  See Mills, 244 F.3d at 5.

even greater limitations on the plaintiff's physical abilities.  In any event, as described above and in the ALJ's written decision, Dr. McKeon's opinion is at odds with other evidence in the administrative record.  Therefore, the ALJ's decision to give little evidentiary weight to Dr. McKeon's opinion of Cappuccio's physical limitations was appropriate and must be upheld on appeal.

### Opinion of William F. Scalise

The plaintiff also argues that the Commissioner's decision should be reversed because the ALJ failed to credit the statements and opinions of her therapist, William F. Scalise, MSW, LICSW.  (See Pl. Mot. at 2-3).  To the extent Cappuccio is relying on an Evaluation and Treatment Summary that Mr. Scalise prepared on June 19, 2014, it is undisputed that the document was never presented to the ALJ.  (See id. at 3).  Accordingly, this court cannot consider it for the reasons described above.  However, to the extent Cappuccio is relying on opinions that Mr. Scalise rendered in a Psychiatric Disorder questionnaire that he completed in November 2011, and on statements that are set forth in an Evaluation and Treatment Summary that he prepared in November 2012, this court finds that the ALJ's failure to describe how she weighed that evidence in assessing Cappuccio's mental RFC requires a remand to the ALJ.

Mr. Scalise, a licensed clinical social worker, has provided mental health treatment to the plaintiff, off and on, since March 2008.  (Tr. 624-25).  On November 15, 2011, Mr. Scalise completed a Psychiatric Disorder questionnaire in which he diagnosed Cappuccio with major depressive disorder and "anxiety disorder not otherwise specified," and answered questions pertaining to the plaintiff's psychological history and current mental status.  (Tr. 524-26). Significantly, Mr. Scalise noted that Cappuccio was admitted to McLean Hospital for eleven days

in November 2008 due to suicidal ideation, and had been treated off and on as an outpatient since that time.  (Tr. 524-25).  He also reported that Cappuccio's depression and anxiety adversely impact her concentration and attention, and "interfere frequently in completely mundane daily tasks (laundry, dishes, housekeeping, sleep) especially [during the] past 3 yrs."  (Tr. 524).  Mr. Scalise further stated that while her memory and ability to function socially were not significantly affected by her mental impairments, Cappuccio was "easily stressed even in routine matters at times withdrawing emotionally."  (Tr. 524-25).  He described Cappuccio's then-current treatment as consisting of "Xanax PRN," as well as biweekly therapy sessions.  (Tr. 526).  He further described her prognosis as "guarded given recurrent depression and anxiety over at least past several years."  (Id.).

On November 28, 2012, Mr. Scalise prepared an Evaluation and Treatment Summary describing the nature of Cappuccio's psychological impairments and the course of her treatment for depression and anxiety.  (Tr. 624-26).  Therein, Mr. Scalise reported in relevant part that Cappuccio "currently continues to experience problems of anxiety, panic attacks and major (recurrent) depression, with specific symptoms such as much difficulty sleeping, sadness, low self-esteem, difficulty focusing, preoccupation with negative thoughts, and, in addition, worrying about herself and her family's physical problems."  (Tr. 624).  He also stated that her recurrent bouts of major depression had become more serious over the past four years, "which has at times left her nearly immobilized."  (Tr. 626).  In addition, Mr. Scalise opined that Cappuccio's "chronic physical and emotional problems . . . prevent her from working and financially supporting herself," and he urged the Social Security Administration to grant her request for benefits.  (Tr. 626).

The ALJ considered this evidence in connection with her assessment of Cappuccio's RFC, but she did not indicate whether or to what extent she credited his comments regarding the impact that the plaintiff's mental impairments had on her ability to function.  (See Dec. 6-8; Tr. 16-18).  Instead, the ALJ stated that she had given "great weight" to the opinion of Michael Maliszewski, Ph.D., a non-examining state agency psychologist.  (Dec. 8; Tr. 18).  Dr. Maliszewski reviewed the plaintiff's medical records on August 11, 2011, and rendered an opinion as to her mental RFC.  (Tr. 78-79).  He determined that Cappuccio had some moderate limitations in the areas of understanding and memory, as well as in the areas of concentration, persistence and pace, but that she retained the mental capacity to perform simple tasks, and had no limitations on her ability to interact socially or adapt to changes in the working environment.  (Id.).  In her written decision, the ALJ explained her decision to credit Dr. Maliszewski's opinion as follows:

> I grant great weight to the opinion of [Dr. Maliszewski] because it is consistent with substantial evidence of record and the longitudinal treatment record.  Specifically, it is consistent with Dr. Imber's findings indicating adequate memory and only mild weakness in executive functioning.  *It is also consistent with Mr. Scalise's report indicating no significant impairment to memory and relatively good social functioning.*  It is also consistent with the claimant's ability to go shopping in the community and occasionally go to malls and movie theatres.  Finally, it is consistent with the claimant's lack of psychiatric and psychopharmacological treatment.

(Dec. 8; Tr. 18 (emphasis added; internal citations omitted)).  While it is clear from the ALJ's reasoning that she did not reject Mr. Scalise's views altogether, she made no effort to explain what weight she had given to his statements.  (See id.).  This court finds that her failure to do so in this case was in error.

"An [ALJ] must give controlling weight to the opinion of a 'treating source' when that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with substantial evidence in the record." Taylor v. Astrue, 899 F. Supp. 2d 83, 87 (D. Mass. 2012).  "The [ALJ] also must provide 'good reasons' for the weight ultimately assigned to the treating source opinion." Id. at 87-88.  However, "[o]nly 'acceptable medical sources' can be considered treating sources, whose medical opinions may be entitled to controlling weight" under the Social Security regulations." Simumba, 2014 WL 1032609, at *8 (quoting 20 C.F.R. §§ 404.1527(c), 416.927(c)).  As the Commissioner points out in the instant case, a therapist or licensed social worker like Mr. Scalise is not considered an "acceptable medical source" for purposes of the disability analysis. See 20 C.F.R. § 404.1513(a) (listing acceptable medical sources).  However, this does not excuse the ALJ's failure to describe her treatment of Mr. Scalise's opinions under the circumstances presented here.

An ALJ may use evidence from "other sources," such as therapists and social workers, "to determine the severity of the impairment and how it affects the claimant's ability to work." Simumba, 2014 WL 1032609, at *8 (quoting 20 C.F.R. § 404.1513(d)).

> As the Commissioner's own Social Security Ruling explains, "[t]he evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case.  Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." SSR 06-03p at *5.  An administrative law judge, however, may not, ignore "other medical sources" or fail to adequately explain the weight given to such evidence.

Taylor, 899 F. Supp. 2d at 88.  "Thus, although 'other medical sources' are not entitled to controlling weight and an [ALJ] is not required to provide 'good reasons' for the weight assigned to such opinions[,] . . . she still must adequately explain [her] treatment of the opinion

so that a reviewer can determine if the decision is supported by substantial evidence." Id. at 88-89.  As described above, the ALJ failed to meet this obligation here.

The Commissioner argues that Mr. Scalise's opinion on the ultimate issue of disability and inability to work is not considered a medical opinion for purposes of the ALJ's analysis, and is not entitled to deference.  (Def. Mem. (Docket No. 14) at 14).  The Commissioner's argument on this point is correct.  "[T]he ultimate question of disability is for [the Commissioner], not for the doctors or for the courts."  Lizotte, 654 F.2d at 128 (quoting Rodriguez, 647 F.2d at 222). Nevertheless, the evidence from Mr. Scalise was not limited to his opinion that Cappuccio's impairments prevent her from working.  Mr. Scalise also provided evidence showing that the plaintiff experienced recurring bouts of serious depression that interfered significantly with her day-to-day activities and at one time, albeit prior to her alleged onset date, required that she be admitted to a psychiatric hospital.  (See Tr. 524-25, 625-26).  It is unclear how the ALJ evaluated such evidence or why she failed to credit it.  Her omission in this regard is particularly troubling because Mr. Scalise has had a lengthy treatment relationship with the plaintiff, and is the only mental health provider identified in the record.  Moreover, the record demonstrates that Dr. Maliszewski had no opportunity to consider Mr. Scalise's reports because Dr. Maliszewski assessed the plaintiff before Mr. Scalise completed either his November 2011 Psychiatric Disorder questionnaire or his November 2012 Evaluation and Treatment Summary. (See Tr. 79, 526, 624).  This is especially troublesome since Dr. Maliszewski did not examine the plaintiff, and, therefore, based his record review on an incomplete record.  "When an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court ordinarily should remand the case to the agency."  Seavey,

276 F.3d at 12.  Accordingly, this matter will be remanded so that the ALJ can properly address this issue.

### Assessment of Dr. Imber

Cappuccio's final challenge to the ALJ's RFC determination concerns the results of a mental status assessment that was administered by a neuropsychologist, Michelle L. Imber, Ph.D., as part of a psychological examination of the plaintiff.  (See Pl. Mot. at 3).  Specifically, on July 26, 2011, Dr. Imber administered the Montreal Cognitive Assessment, or "MOCA" to the plaintiff in order to evaluate Cappuccio's cognitive functioning.  (Tr. 511).  According to Dr. Imber, "[t]he claimant obtained a total score of 23/30 on the MOCA, which falls within the impaired range[.]"  (Id.).  Nevertheless, Dr. Imber determined that the overall results of the plaintiff's testing "support mild weaknesses in executive functioning, memory retrieval, and visual-spatial processing."  (Id.).  The plaintiff suggests that evidence of the MOCA testing supports her claim of disability.  (Pl. Mot. at 3).  However, she has not shown that Dr. Imber's findings are inconsistent with the ALJ's conclusions regarding her mental RFC.

The record shows that Dr. Maliszewski reviewed the results of the MOCA tests in connection with his assessment of the plaintiff's RFC, and relied on Dr. Imber's findings to support his conclusions regarding the plaintiff's mental limitations.  (Tr. 79).  Specifically, in his assessment, Dr. Maliszewski noted that the MOCA testing revealed some cognitive deficits, which could adversely impact the plaintiff's ability to maintain pace.  (Id.).  He relied on that evidence, in part, to support his determination that Cappuccio retained the mental capacity to remember and carry out simple instructions, make simple work-related decisions, and remember and perform simple tasks.  (Tr. 78-79).  As described above, the ALJ afforded "great

weight" to Dr. Maliszewski's opinion in assessing Cappuccio's RFC.  Therefore, by crediting Dr.

Maliszewski she, effectively, credited Dr. Imber's findings at step four of the sequential analysis.

      **C.**      **Consideration of New Evidence**

      An issue remains as to whether or not, upon remand, the ALJ should consider the

documents that are attached to Cappuccio's motion as exhibits 1A through 1D.  The Social

Security Act provides in relevant part that the court "may at any time order additional evidence

to be taken before the Commissioner of Social Security, but only upon a showing that there is

new evidence which is material and that there is good cause for the failure to incorporate such

evidence into the record in a prior proceeding . . . ."  42 U.S.C. § 405(g).  The burden is on the

plaintiff to demonstrate that the evidence "is both 'new' and 'material,' as those terms are

used in the statute[,]" and that there was "good cause" for her "failure seasonably to have

offered the evidence."  <u>Evangelista v. Sec'y of Health & Human Servs.</u>, 826 F.2d 136, 139 (1st

Cir. 1987).  While Cappuccio has not satisfied her burden with respect to the remaining

documents, this court finds that upon remand, the ALJ should consider the June 19, 2014

Evaluation and Treatment Summary, which was prepared by Mr. Scalise and is attached to the

plaintiff's motion as exhibit 1C.

      "In order for the evidence submitted by Plaintiff to be deemed 'new' within the meaning

of the Act, the evidence must not have been contained within the administrative record at the

time the ALJ rendered [her] decision."  <u>Gullon ex rel. N.A.P.P. v. Astrue</u>, No. 11-099ML, 2011 WL

6748498, at *9 (D.R.I. Nov. 30, 2011).  Additionally, in order to show that evidence is both

"new" and "material," the plaintiff must establish that the "evidence is necessary to develop

the facts of the case fully, that such evidence is not cumulative, and that consideration of it is

essential to a fair hearing." <u>Evangelista</u>, 826 F.2d at 139. "The mere existence of evidence in addition to that submitted before the hearing examiner will not constitute sufficient cause for remand. Rather, to qualify under the new/material standard, the [proffered] data must be meaningful – neither pleonastic nor irrelevant to the basis for the earlier decision." <u>Id.</u> at 139-40 (internal citation omitted). While the remaining documents warrant no consideration upon remand, this court finds that a review of Mr. Scalise's updated Evaluation and Treatment Summary is necessary for a full understanding as to the nature and scope of the plaintiff's mental impairments.

The first document, exhibit 1A, consists of a letter from Dr. Christiani to the plaintiff dated June 12, 2014. Therein, Dr. Christiani restates his opinion that Cappuccio cannot tolerate "strong odors such as gases, vapors, [or] fumes that have a chemical origin," and confirms his recommendation that she use baking soda and vinegar, instead of cleaners and strong detergents, to clean the inside of her home. (Docket No. 12-1). This evidence already exists in the record, and was adopted by the ALJ in assessing the plaintiff's RFC. Therefore, it is neither new nor material within the meaning of the Social Security Act.

The next document, designated as exhibit 1B, consists of a letter dated June 8, 2012 from Bernard E. Kreger, M.D. to Stephen Kott, the Pension/Annuity Director at the Massachu-setts Laborers' Pension Fund. In his letter, Dr. Kreger describes the results of an examination that he performed on the plaintiff's right knee in April 2012, during the period under review by the ALJ. (Docket No. 12-2 at 1). He also discusses the impact that Cappuccio's knee problems had on her stability, and he opines that she is "totally and permanently disabled from employ-ment in the construction trade as a laborer." (<u>Id.</u>). As described above, the ALJ agreed with

that conclusion, and determined that Cappuccio was unable to perform her past relevant work as a laborer. Therefore, the plaintiff has not shown that this evidence is material.[5] <u>See</u> <u>Evangelista</u>, 826 F.2d at 140 (explaining that "remand is indicated only if, were the proposed new evidence to be considered, the [Commissioner's] decision 'might reasonably have been different.'" (quoting <u>Falu v. Sec'y of Health & Human Servs.</u>, 703 F.2d 24, 27 (1st Cir. 1983)).

The fourth document attached to Cappuccio's motion, exhibit 1D, also fails the newness/materiality requirement of the applicable standard.  That document consists of a letter to Cappuccio from her chiropractor, Scott A. Darragh, DC, MPH, MT.  Therein, Mr. Darragh briefly describes the plaintiff's lower back discomfort and need for "[c]onservative "[c]hiropractic health care" to "manage her chronic pain state and minimize the chances for strong pharmaceutical intervention[.]"  (Docket No. 12-4).  Although this evidence is new in the sense that it is not already contained in the record, the letter is dated July 9, 2014, more than a year and a half after the date of the ALJ's decision.  As a result, it provides little if any insight into Cappuccio's condition during the relevant time period.  Furthermore, in light of Mr. Darragh's description of  Cappuccio's treatment as "conservative," this court finds it highly unlikely that the document would have any impact on the Commissioner's decision in this case. Therefore, this exhibit does not justify a remand and need not be considered by the ALJ.

---

[5]  Even if this court were to assume that Dr. Kreger's letter is material, Cappuccio has failed to establish cause for her failure to present it to the ALJ.  There is no dispute that the letter was available during the administrative proceedings, but that Cappuccio's counsel believed it was unnecessary to support her claim.  (<u>See</u> Pl. Mem. at 2). "Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided – to the end that the process not bog down and unduly impede the timely resolution of social security appeals." <u>Evangelista</u>, 826 F.2d at 141.  Cappuccio's untimely attempt to second guess her lawyer's advice, at this advanced stage of the proceedings, is insufficient to show "good cause" under the Social Security Act.

Exhibit 1C, which consists of a June 19, 2014 Evaluation and Treatment Summary from Mr. Scalise, warrants an alternative conclusion.  In his Summary, Mr. Scalise describes the nature of Cappuccio's psychological issues and the course of her treatment, including a period of treatment that began in July 2013.  (See Docket No. 12-3).  While much of the information contained in the Summary overlaps with the information described by Mr. Scalise in his November 28, 2012 Evaluation and Treatment Summary, the additional information regarding Cappuccio's most recent period of treatment allows greater insight into the nature of the plaintiff's mental impairments and the extent of her struggles with recurring depression and anxiety.  It also establishes a more thorough, longitudinal picture of Cappuccio's attempts to obtain effective treatment for her mental conditions.  Therefore, and in light of the fact that the matter will be remanded in any event, this court finds that the ALJ should consider this evidence in connection with her review of Mr. Scalise's records.

## IV. **CONCLUSION**

For all the reasons described above, the "Motion to Affirm the Commissioner's Decision" (Docket No. 13) is DENIED, and the plaintiff's "Motion for Order Reversing the Commissioner's Decision" (Docket No. 12) is ALLOWED IN PART and DENIED IN PART. Specifically, the plaintiff's request for a reversal is denied, but the matter shall be remanded for further administrative proceedings consistent with this decision.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge